Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and his honorable court. Thank you, Ms. Pollard. Good morning to the advocates today. Looks like you are ready. We have two cases to hear, the first one being Belegas v. Arbogast et al. I see the appellant has divided his time. Is that because of your two different defendants and you're going to address one and then address the other? You can go ahead and respond before you get started with the actual timing, Mr. Darnell. Yes, sir. That's it in part. The second reason is, is that I got my second, I was scheduled to get my second COVID vaccine yesterday and I had heard that people have reactions. I wound up getting moved up a day and I did have a reaction. And so with that was out of an abundance of caution for. For the COVID vaccine, but also because we had we have three people, but two can be addressed together and officer Arbogast is completely separate. Well, I'm not sure the panel will be able to comply with the lines you're trying to draw, but I understand what you're trying to do and good luck with the effectiveness of the vaccine. And to all of us, you may proceed, Mr. Darnell. Thank you. May it please the court. Council. This is a very tragic fact situation, which unfolded at this point over about a 30 year period of time. But what I think is important for the court to understand is that there have been a number of court proceedings on this matter. There have been three criminal trials that lasted approximately one week each. There were two motions to suppress and there were three. There was a red hearing that lasted for at least three months. I know that in the appellee's brief, they said that they were having to rely on a memory of a young man from 30 years ago. And I point out the number of trials because that simply isn't the case. There are reams and reams and reams of volumes for people to go look at facts. Everybody knows what every witness has to say about the pretrial facts. By that, I mean the facts before the first of the three trials. But the third amended complaint is replete with allegations that Graves, Ortega or Arbogast did something or cooperated with Detective Marcus. I simply want to point out that this is not a case where that information was not available. There's plenty of evidence about who did what. There is a lot of information in the third amended complaint with language that the officers conspired and agreed without ever specifically saying what it is they conspired to do and how that was accomplished or not accomplished. One example that they conspired and agreed to violate a constitutional right, which is just about as formulaic as I believe you can get. I thought a lot of it is about an alleged conspiracy to coerce the plaintiff, then the criminal defendant, into confessing and to coerce people like his cousin and others to implicate him. So why aren't those allegations, and you know what it says, all the threats about going to prison, about what's going to happen to you in prison, why aren't those allegations about the coerced confessions and statements specific enough? Those are, but those are aimed at Detective Al Marcus. There is the nebulous language that says that Graves, Ortega, or Arbogast agreed and they came up with a plan. But when it gets down to the facts about the coercion, it is all Detective Marcus. And at one point in their brief, they indicate that they don't know whether Detective Arbogast was there all the time or when he was there. And that's what I'm saying. There simply isn't the specificity that is required to overcome the invocation of qualified immunity. But didn't they also allege that unnamed officers who met at the mall and discussed coercing a confession and confessing implicating statements? I think they indicated that they met at the mall, although the time period is not clear. They two vehicles met at the mall and then they drove either to the juvenile detention center or to the downtown police station. But I don't think there's any specificity about what it is they agreed to do. I mean, don't they allege that they agreed to coerce a confession out of the defendant and coerce implicating statements out of the other witnesses? They allege that generally, yes, sir. That's pretty specific. Well, they don't. What it came down to was, according to the pleadings is Detective Marcus was the one who took the statements. Detective Mark and I believe Detective Grace took the witness statement and the allegations that they were in communication thereafter. And I would agree with the court that that is specific. What is not specific is what Detective Arbogast agreed to do or what his role was to be in all of that. And that is why Detective Arbogast is here on appeal. And these other gentlemen are not. We'd like you to address the jurisdictional issue. If you were going to do that when she starts the clock again in two minutes, that's fine with me. But I don't see any reason to demarcate your two arguments that much. Once you address why the particular issue regarding sufficiency of the pleadings, whether they even make a sufficient claim, why that isn't within our jurisdiction to address. Well, I believe that is within your jurisdiction because, as Iqbal pointed out, qualified immunity and 12B6 go hand in hand and you can't address one without the other. And we think that the sufficiency of the pleadings go to whether the officers are entitled to qualified immunity. What is your are you relying primarily on Iqbal? Yes, sir. OK, well, we'll hear from the other side more on that. Let me just ask you one thing about it. Doesn't Anderson, our case in Anderson, say that you can that we have jurisdiction to consider the motion when it's necessary to decide to consider the qualified immunity? We have pendant jurisdiction to consider and rule on, consider the ruling on the motion when it's necessary to decide the qualified immunity defense. Yes, sir. I believe it does say that. And why not? Why not the case here? Because I think this is all tied together here with the specificity requirements that are required by Iqbal and Twombly also go to 12B6. And so it all becomes one issue. Hold on a second. Just start his next block of time. You may receive Mr. Donnell. OK, I think this was the time Jeep was going to stand up. Is that is that OK? I'm sorry. What? This was when my son was going to stand up and start. Yes. Oh, I didn't notice. I see senior and junior now. I didn't I didn't notice that at first. Yes, sir. Well, since you're making a change, are you satisfied? Gene, with his answer. Yeah, I am. I am. OK. Good morning. May it please the court. Would the justices like me to continue with the jurisdictional argument? I'm a little bit more prepared to handle that. Or I was going to handle the two officers that are post conviction, post release, 25 years later. Would you add what you think would be helpful to us on the jurisdiction? Then you can discuss the second wave of conspiracy, perhaps. Yes, sir. So I think you start with Iqbal, where they use the the language inextricably intertwined, where when the sufficiency of the pleading determines whether or not the first step of qualified immunity has been overcome, which is was a constitutional violation alleged against this particular defendant. That's where the two step or step one and 12B6 come in together. I get a lot of grief for my chart, my flow chart that I have drafted in all of our motions to dismiss. Now, I don't think judges or opposing counsel always like it when I have arrows. But that is exactly the issue that we were presented the last time at the Fifth Circuit in the Ramirez case is that we made bad law and is offsided against us. And so I wanted to make sure I understood it and clarify that issue. 12B6 goes almost directly to step one. That's the whole point. Did they allege a constitutional violation against these officers with enough specificity to overcome their qualified immunity? Not did they allege a constitutional violation against every officer, but against the specific officers before this court? And I think you move from that basic premise from Iqbal and you go on to cases like Cox v. But is a case from this court where this court wrote that our jurisdiction in this case is not limited to reviewing the rejection of the qualified immunity defense. We also have jurisdiction to review whether the pleading sufficiently state a claim upon which relief can be granted. And they cited right back to Iqbal saying these two issues are inextricably intertwined. So when the court is looking at whether or not it has jurisdiction, it is the step one of the qualified immunity analysis. We're not necessarily arguing that step two, that he didn't have constitutional rights or that they weren't clearly laid out. I think step two personally is more properly fleshed out in a motion for summary judgment. I think in a pragmatic sense, step one is 12 v six. Step two is more of a summary judgment issue. I may be wrong, but that's my personal sense. And so. If I may move on to my two officers, unless there's further questioning about the jurisdictional issues, I can kind of put that in context. Proceed. So the two officers I am arguing on behalf of our officers, Sanchez and Loya, who are alleged to have begun their investigation. Twenty five years after the original, even more than 25 years after, after the original investigation into Daniel Villegas, after Daniel Villegas was. Filed a writ of habeas corpus, which was granted court of Texas Court of Criminal Appeals, granted him relief on inefficient, ineffective assistance of counsel. He got a new trial. Then he got a bond at once the new trial was granted. And then these two officers, according to plaintiff's allegations, are alleged to have gotten involved. There is not nearly the specifics about what the allegations are against these two officers, as are against officers. Pre trial to reuse that word. Here you have. One officer officer's son Sanchez, who is alleged to have interrogated a witness. And made him feel like he had to give a certain answer. And that is a direct quote from plaintiff's briefing and from the complaint at paragraph. One forty one. The only specific fact. Alleged against officer lawyer is that he was, quote unquote, in the close vicinity during that interrogation. The remaining allegations against these two officers, which are about three pages, as opposed to the 40 some odd pages prior. The are that they have these. Conspiracy claims, these nebulous, they made these agreements, they did. That they were. The but for cause of the third criminal trial. And most everything is either sort of the ball. Two nebulous to be concrete against this defendant, because it's really a a idea masquerading as a fact. Or it is conclusions masquerading as facts that simply. Cannot be accepted. Conclusions don't have to be accepted. Facts do. This court is allowed to determine whether or not conclusions make sense. And the conclusion that is being used to bring detective or detective lawyer, detective Sanchez into this case is that they are the but for cause. Of the defendant's third criminal trial requested when he filed his writ. That doesn't make sense. That goes against the common sense of this court and the experience of this court. Police officers don't determine who goes to trial. Prosecutors determine who goes to trial. Our bread and butter is criminal defense. That's a fact that this court knows all too well. That is not a fact. That is a conclusion. And. If once you strip that back and you look at the prism of these two officers in the context of this case, the allegations simply don't rise to the level of these two officers are alleged to have actually violated the plaintiff's constitutional rights. There are claims of violation of rights. Your time is up. One of you will have time for rebuttal. Yes, sir. Thank you. All right. Mr. Helpful. Tell me where the. I'll pronounce that. That's correct. Your Honor. Sam Heppel on behalf of plaintiff appellee Daniel Vegas. May it please the court. Your honors. Daniel Vegas was wrongfully charged, tried, convicted and retried for a double murder. He did not commit because of the misconduct of El Paso police officers, including the three appellants who pursued a corrupt police investigation, despite knowing that Daniel Vegas was innocent. And the allegations in plaintiff's complaint set out in detail over a complaint spanning more than 200 paragraphs, the specific acts of misconduct, the specific constitutional violations, which we're alleging here, which are allegations of fabrication of evidence. Suppression of evidence against all three appellants and specific to defend an arbogast allegations of his personal involvement in coercing Mr. Vegas is involuntary confession. The appellants had their opportunity before the district court to make the arguments they're making here related to the factual sufficiency of the complaint had every opportunity to raise whatever factual and legal arguments they wanted. And the district court considered them and issued a well-reasoned opinion filled with detailed citations to plaintiff's allegations, paragraph by paragraph, as well as detailed citations to applicable circuit and Supreme Court law, setting forth why taken as true, which, of course, at this stage, plaintiff's allegations must be taken as true. There was sufficiently pleaded allegations of constitutional violations against these three appellants. What the appellants are essentially seeking here is a do over. They're seeking a de novo review in this court of the arguments they made below, and there's no jurisdiction for this court to consider the arguments. And even if there were jurisdiction, their arguments would fail on the merits because of the sufficiently detailed allegations. I'd like to start with the jurisdictional argument, which your honors had asked some questions of appellants. And, of course, the ordinary rule is that there is no jurisdiction to consider an interlocutory appeal at this stage. And there is an exception to that rule set forth in Supreme Court and circuit case law. It's a narrow exception, but it provides where there is a pure question of law, an abstract question of law that turns on qualified immunity. This court can hear an interlocutory appeal. And the precedents of this court, including Armstrong v. Ashley, which is at 918F3-419, discussed the ordinary presentation of that type of question of law. Ordinarily, that is a legal question around was the law clearly established at the time of the alleged misconduct or was there a constitutional violation at all? And here, both of those issues are undisputed. Appellants are not raising an argument related to the law was not clearly established at the time. They are not arguing that fabrication of evidence, suppression of evidence, or coercing a confession are unconstitutional. They are arguing, it seems to me, that their clients, the particular defendants, didn't commit a constitutional violation on the complaint as alleged. And that's, you know, I know you disagree with that premise, but why isn't that at the pleading stage, that's the first step of qualified immunity. The second step is whether it's clearly established. And they're only going after the first step. But I mean, that's what Iqbal itself was about, was the first step of qualified immunity. Are there sufficiently pled allegations to state a constitutional violation? That's correct, Your Honor. And Iqbal did set forth, again, essentially an exception to this exception, an even narrower path where there are under limited circumstances jurisdiction to consider the factual sufficiency of a complaint's allegations. But a necessary requirement for that jurisdiction to be invoked is that essentially both sides have to be accepting – talking on the same wavelength. The appellants have to accept what those allegations are. There has to be an acceptance of what the facts are, and then the jurisprudence holds that there is still that pure legal question applying the law to a given set of facts. They can't dispute the allegations, but can't they say they're not specific enough? I know you think they are specific, but can't that argument be made in an interlocutory appeal? That argument can be made, Your Honor, but it needs to be – I think what this court needs to do in evaluating the jurisdictional argument is peel back the labels that appellants put on their arguments and look at what they actually say in their briefing. Look at are they properly crediting the facts in terms of what the allegations are in the complaint, or are they misconstruing them? I think we lay that out in our brief, the areas in which they are not properly construing what the factual allegations are in the complaint. I can give some examples. Appellant Arbogast – Counsel, help me with this. I'm not sure why that's any different than saying their claim is that the allegations are insufficient, that they don't show with sufficient detail the actions of the individual defendants. So that's their position, and that's their legal argument as facts are not legally sufficient. You're saying they're wrong on that. Isn't that just how we resolve with the jurisdiction that we have to examine the sufficiency of the complaint? By you're saying what we are actually saying in this complaint meets the standards. Here's the detail. I guess I'm not fully following at this point the distinction you're trying to make. Perhaps it would be helpful if I gave an example. So, for example, page six of Appellant Arbogast's brief is where he discusses his version of the facts. And he starts out with the claim that the factual allegations against Officer Arbogast are innocuous at best and then presents a list of what is a cherry-picked, selective list of the facts from the complaint, not addressing every fact that's alleged. And then goes on to essentially hand-wave away the remaining of plaintiff's allegations by saying, well, whatever else I haven't addressed is simply too conclusory. And states, for example, Arbogast's appeal rests on the contention that plaintiff's complaint is, quote, without any explanation as to what information he, Officer Arbogast, suppressed. And looking at plaintiff's complaint, that description of the allegations that are at issue here is simply not correct. The complaint lays out in detail the pieces of evidence that Officer Arbogast suppressed. That's paragraphs 91 through 116 of plaintiff's complaint. But that's just saying they're wrong on the merits of the argument, not that there's a jurisdictional problem with the argument. Well, and I agree with your honor that the two issues are closely intertwined. In this case, the facts and jurisdiction are intertwined. But as a necessary prerequisite to invoking this court's jurisdiction, they have to be properly crediting what the nature of the allegations are and saying those allegations are not sufficient. And if their appeal rests on a misconstruction, a misrepresentation of what the full extent of the allegations are, a cherry-picked selection of the facts, and they make arguments based on that, then there is no pure question of law because then we're back in the universe of two sides quibbling about what the extent of the factual allegations are. That's the role of the district court, and that does not present a pure question of law for appeal. And I think that renders this case like the Ramirez case, which we cite in our brief, which Mr. Darnell referenced in his argument, the Ramirez v. Esquihada case at 921F3, 497, where this court held that if there is a failure to credit the facts, in that case, it was the appellant challenging the credibility of the facts. And here it's similar. They're simply not accurately reciting the extent of the facts. They're making an argument based on a factual record, which was not the factual record contained in the complaint, which is not the factual record found by the district court. And that's what deprives this court of jurisdiction, and it's the same reason, the same principle that's animating the standard that applies at the summary judgment stage, which is that this court says – or the jurisprudence says that this court lacks jurisdiction over the question of the sufficiency of the evidence but has jurisdiction over a case. It's given factual record and whether there are material disagreements of factual disputes. Well, Mr. Heffel, you've made that argument well and diligently. Why don't you move on? Turning to the merits, and appellants rely on Iqbal for their jurisdictional argument, and they essentially rely on Iqbal also for their merits argument. They say this case is exactly like Iqbal in terms of the extent and the sufficiency of the arguments, and it's our position that the detailed level of factual allegations in this case are night and day different from the type of allegations that were found to be lacking in the Iqbal case. Of course, as this court knows, there is no heightened pleading standard just because there's been an invocation of qualified immunity just because this is a Section 1983 case. It is the ordinary Rule 8 pleading standard which applies, and that's the Anderson v. Valdez case 845F3-580, which this court expressed that, made that clear. So there's no additional level of specificity required to overcome qualified immunity, and the complaint lays out in detail over those 200 paragraphs specific allegations that Officer Arbogast fabricated evidence. And what evidence did he fabricate? He fabricated those four statements, four witness narratives, working with the other officers, crafted those false statements, which were then used against plaintiff at his criminal trial to convict him. Those were the false statements that were given by David Rangel, Rodney Williams, Marcos Gonzalez, and the plaintiff himself, Daniel Villegas. The act of fabrication, those false witness narratives, is detailed in the complaint, is detailed what those false statements were, and details of how the officers working together worked to extract those statements. It's the same level of detailed allegations on the Brady violation. I referenced it in my argument on jurisdiction with the failure to credit those arguments. There's 25 paragraphs of detailed allegations about what the specific pieces of evidence were that the officers learned of during their investigation, what the evidence was, why it was exculpatory, and that those were failed, that the Arbogast did not turn those over to the defense team or the prosecution. Those were suppressed in violation of the due process rights. Turning to Loya and Sanchez. I have a question about the claims on those two defendants. Count four alleges unlawful detention, Fourth Amendment violation. What was the detention if, as I understand it, your client was on bond before the last trial and then was acquitted, so was never in jail relating to the third trial? What's the detention there? Correct. And so I would describe it not as a detention but a deprivation of liberty claim. And we cite in our brief the case law that even absent a detention in the sense of an incarceration, that the case law coming from the Supreme Court most recently cited in the footnote in the McDonough case, it qualifies as a deprivation of liberty if you are on bond but subject to the restrictions on your liberty that an ordinary citizen is not subject to. You're not saying it's a Fourth Amendment seizure, though. You're just relying on the general liberty interest, which you're – I mean, clearly, being on bond, when there's conditions, there's some liberty restrictions. But you're not saying it's a Fourth Amendment seizure, then? It is a Fourth Amendment claim for deprivation of liberty, and that's the – It's not a surge. You didn't need a surge or a seizure under the Fourth Amendment, so it would have to be a seizure. Correct. And it's our position, and we cite the case law in our brief, that it does rise to the level of a Fourth Amendment violation, that there's been a liberty deprivation, and that's because of the restrictions on his… There's a case that says being on bond is a seizure under the Fourth Amendment? There's cases that discuss that as being a deprivation of liberty, and the citation in our brief to… Right, under the 14th Amendment, maybe there's something there. But I'm just trying to say it says it's a Fourth Amendment issue. It is a Fourth Amendment issue because it is in the lead-up to his retrial. The only legal argument that appellants make on this point, they don't argue that it's not a seizure in the sense of arguing that constitutional standard. They argue that there is a de minimis harm, that essentially Mr. Villegas has not been harmed, and that's both factually and legally incorrect. It's factually incorrect because he was harmed. The allegation in the complaint, again, which has to be credited as true at this stage, is that all of the pre-existing evidence was entirely discredited through the post-conviction, through the habeas proceedings. His confession had been suppressed, and all of the other evidence had been discredited. And in absence of this fabrication of new evidence, the case against Mr. Villegas would have collapsed. And that's a factual allegation that's detailed in the complaint about how that other evidence was discredited because it was tainted by the misconduct of the officers. And it's a causation point, which of course is a classic factual question for a jury to determine. But the allegation is there that but for Loya and Sanchez's fabrication of a new false statement, this time from Oscar Gomez's Mr. Villegas's childhood friend, the complaint alleges those two officers together crafted a false narrative that Mr. Villegas confessed to Mr. Gomez essentially. And it was that act of fabrication that caused Mr. Villegas's case not to go away in late 2013, early 2014 as it would have otherwise, but to stretch on for an additional almost five years facing the deprivation of his liberty and also the significant stress and emotional harm of facing a criminal retrial, facing the prospect of return to life in prison. And so I think it's simply not the case to say that there is a de minimis harm there. There's an extensive harm that has been alleged in the complaint, and nor is it accurate to say that those are nebulous allegations. Certainly we agree that there are fewer paragraphs of allegations against Loya and Sanchez than there are against Arbogast and the other officers going back to 1993. But there is a specific allegation, not nebulous, that the two officers working together decided to fabricate a false statement that they came up with that false narrative. It describes the individual who was used to be the vehicle for that false narrative that the officers came up with. It describes the tactics that were used, and it alleges that that was used at Mr. Villegas's criminal trial. And so there is certainly sufficient details there. And of course, we allege that all of these officers knew that Mr. Villegas was innocent, which I think goes to strengthening the plausibility of the allegations. And there's the details in the complaint that Mr. Loya, in a conversation with a retired officer, agreed with the statements that this is an innocent man, that he didn't do it, but proceeded nonetheless. What about Sanchez? Is there similar allegations about Sanchez? Well, there's no specific allegation about Sanchez in terms of specific quotes or statements that he made. Certainly the allegation is that he knew he was innocent. That allegation is made. And the facts support that. The facts support that inference based on the discrediting of the evidence from the original case, which essentially left Mr. Villegas with a clean slate. Nothing, no credible evidence pointing to him in face of that Sanchez and Loya in order to keep this case going fabricated false evidence. And I have a question that I don't think it really matters in this appeal, but I'm just curious. How did the police first come across your client, you know, way back 30 years ago as someone to look into in this shooting? So the the complaint sets forth that it was David Ron. Hell was the first witness, Mr. Villegas, his cousin. I think it is still unclear to this. Why would they talk? I guess why would I saw that? And, you know, he says it was it was just a joke. But why did why were they talking to Ron? Hell, I was trying to see if anything preceded that. And maybe no one knows. And I think, you know, the allegation is that they were they were casting about for someone to pin this crime on. They started the complaint detail. They started with other vulnerable young men, other teenagers. They struck out and kept moving, moving forward. And eventually, unfortunately, Mr. Villegas, they settled on him and went full bore pressing the case forward against him, regardless of the truth. And that's a knowing violation of the Constitution. Qualified immunity does not protect. And so we asked the court to affirm the district court's decision here. Thank you, Mr. Donnell. I guess we disagree with Mr. Heppel on the not on the facts that are alleged, but on the detail that they have alleged, as the district court indicated in its order, it went through great detail identifying the facts with regard to Detective Marcus, who, frankly, is in the middle of this thing. But it said that it was more difficult to find the facts with regard to Graves, Ortega and Arbogast. And we are simply arguing that in the facts that have been alleged with regard to Detective Arbogast, that there is no detail. As you go through the allegations in the police brief, it starts out with Arbogast and the other officers, which in reality should be Marcus and the other officers until they get to somebody did this and somebody did that. And generally then it becomes Detective Marcus did this and Detective Marcus did that. There is great detail on a couple of things that Detective Arbogast did. One is that he interviewed a young man by the name of Michael Johnston and Judge Southwick to go to your question. Apparently in 1993, it was a big deal for people in gangs to take personal credit for a shooting, whether they were involved or not. And so there were a number of people that took credit for this shooting, including a young man by the name of Michael Johnston. They picked him up. He was interviewed by Detective Arbogast and as indicated in the briefing, they determined that he had made it all up. He didn't know enough detail to have been involved in this shooting. That was Detective Arbogast. Then they also detailed that Detective Arbogast spoke to Rodney Williams and Mr. Heppel indicated that they obtained a false statement from Rodney Williams. But what he didn't identify was that it wasn't Detective Arbogast. Detective Arbogast began the questioning and then he reported to the other officers that he had no information of interest and he was relieved of interrogation duties. And Detective Monica stepped in and finished the interrogation. So. And that certainly is plenty of detail, but that is the greatest detail about Detective Arbogast. And Mr. Heppel indicated that we were asking for a de novo review of the district court decision. We are asking for a de novo review because I think that's what this is, is we are asking this court to look at the legal question and look at the court's decision and decide if the court was right. I don't know if you were involved in any of the criminal proceedings, but it says with the last trial, the allegation is they coerced this statement from Gomez implicating the plaintiff. And then it says the statement by Gomez was used at trial. Isn't that just rank hearsay? I mean, again, that's probably not directly what's in front of us. I'm just trying to figure out how this whole thing played out. I would agree with the court. But I think it is rank hearsay. And I have read all that stuff. And frankly, I don't remember that being there. I could be wrong, but I don't remember that being there. But I didn't go back and look at it for this argument. But, yeah, I think it would be rank hearsay. The police did allege that as a result of the actions of officers Sanchez and Loya that Mr. Villegas was detained. He was not detained at any point after their involvement. And there is no specific allegation with regard to Detective Sanchez. And so we would ask this court to reverse the district court decision on qualified immunity with regard to these three officers. All right, Mr. Donnell, Mr. Heflin. Thank you for your assistance with this case this morning. We'll take it under advisement.